**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NEIDY BERRIOS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-cv-1406 |
| | ) | |
| v. | ) | Hon. Jorge L. Alonso |
| | ) | |
| ABM JANITORIAL SERVICES - | ) | |
| NORTH CENTRAL, INC., and | ) | |
| DONNA KLJUCANIN, | ) | |
| | ) | |
| Defendants. | ) | |

_____

| | | |
|---|---|---|
| NEIDY BERRIOS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16-cv-8295 |
| | ) | |
| v. | ) | Hon. Jorge L. Alonso |
| | ) | |
| ABM JANITORIAL SERVICES - | ) | |
| NORTH CENTRAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

After she was discharged from her employment with defendant ABM Janitorial Services

– North Central, Inc. ("ABM"), plaintiff Neidy Berrios filed these two lawsuits. In the first case,

15-cv-1406, plaintiff asserts claims under the Family and Medical Leave Act ("FMLA") against

defendants ABM and Donna Kljucanin ("Kljucanin"). In the second case, 16-cv-8295, plaintiff

asserts claims under the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights

Act of 1964 and the Age Discrimination in Employment Act ("ADEA") against defendant

ABM.[1]  The two cases, which arise from the same set of facts, have been consolidated, and defendants have filed a motion for summary judgment on the claims in both cases.

## I.    BACKGROUND

Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment.  The Court enforces Local Rule 56.1 strictly.  *McCurry v. Kenco Logistics Services, LLC*, 942 F.3d 783, 790 (7th Cir. 2019) ("We take this opportunity to reiterate that district judges may require strict compliance with local summary-judgment rules.").  When one party supports a fact with admissible evidence and the other party fails to controvert the fact with admissible evidence, the Court deems the fact admitted.  *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015); *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004).  This does not, however, absolve the party putting forth the fact of the duty to support the fact with admissible evidence.  *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012).  The Court does not consider any facts that parties fail to include in their statements of fact, because to do so would rob the other party of the opportunity to show that the fact is disputed.  In reviewing the parties' statements of facts, the Court considers any objections opposing parties make to the admissibility of evidence; but, where a party fails to make an objection, the objection is deemed waived for purposes of these motions for summary judgment.

In this case, plaintiff has not responded to defendants' motion for summary judgment.  Plaintiff did not respond to defendants' statement of facts, so the Court has deemed admitted (and, thus, undisputed) every fact in defendants' statement of facts that was supported by admissible evidence.  Plaintiff, by failing to respond, has waived any objections to the

---

[1] Originally, plaintiff brought her claims in the second case against Kljucanin, as well, but plaintiff voluntarily dismissed the claims against Kljucanin.  [Docket 13, case no. 16-cv-8295].

admissibility of defendants' evidence. Plaintiff also failed to respond to defendants' legal arguments, thereby waiving any legal arguments she might have had. *See Burton v. Board of Regents of the Univ. of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017) ("[I]t is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If the [nonmoving party] does not do so, and loses the motion, it cannot raise such reasons on appeal.") (citations omitted); *see also Little v. Mitsubishi Motors North Amer., Inc.*, 261 Fed.Appx. 901, 903 (7th Cir. 2008) (failure "to present facts or develop any legal arguments" in response to motion for summary judgment constituted abandonment of claims).

The following facts are undisputed. Defendant ABM provides cleaning and maintenance services to commercial buildings. Plaintiff Berrios began working as an employee of ABM in July 2002. Throughout plaintiff's employment with ABM, she worked as a custodian at Prudential Plaza in Chicago. Plaintiff worked the night shift, which meant 5:00 p.m. to 1:00 a.m., Monday through Friday.

When plaintiff began working for ABM, she received a copy of ABM's employee handbook (receipt of which she acknowledged in writing). ABM's employee handbook, among other things, stated that accumulating four or more absences within a six-month period could be cause for termination of employment. In 2012, plaintiff received a copy of ABM's work rules (receipt of which plaintiff acknowledged in writing). Among other things, those work rules stated that any night-shift employee expecting to be absent from a shift must call her supervisor at least six hours before the start of her shift. The work rules also stated that "[e]xcessive tardiness or absenteeism is cause for termination."

During her time at ABM, plaintiff sometimes missed work. In 2003, plaintiff was reprimanded twice and suspended for three days after accumulating fourteen unexcused absences. She was also reprimanded for excessive absenteeism in 2005.

Beginning in 2009, plaintiff reported to defendant Kljucanin, ABM's Lead at Prudential Plaza. As Lead, Kljucanin was responsible for ordering supplies, scheduling employees to work for absent employees and maintaining a relationship with the property manager at Prudential Plaza. Kljucanin did not have the power to hire and fire employees. Instead, Kljucanin reported to Leon Bobola ("Bobola"), who had the power to discipline employees and terminate employment.

Plaintiff continued to miss work while reporting to Kljucanin. Kljucanin kept contemporaneous notes of employee attendance by recording the reasons employees gave her when they missed work on particular days. Plaintiff accumulated 22 unexcused absences in 2010 and 25 unexcused absences in 2011.

On January 20, 2012, Bobola directed Kljucanin to suspend plaintiff for three days as punishment for six unexcused absences, including three in November 2011, two in December 2011 and one on January 19, 2012. Plaintiff filed a grievance with her union, and the punishment was negotiated down to a one-day suspension.

A year passed before plaintiff was again disciplined for absenteeism. On February 18, 2013, Bobola directed Kljucanin to suspend plaintiff for three days for plaintiff's four unexcused absences in January 2013 and five unexcused absences from February 11 through 15, 2013. Plaintiff filed a grievance, and the suspension was reduced to two days.

On February 27, 2013, plaintiff provided ABM with information from her psychiatrist, Dr. Aida Mihajlovic ("Dr. Mihajlovic"). Dr. Mihajlovic certified that plaintiff suffered from

periodic flare-ups of depression, during which times plaintiff experienced sadness, lack of energy, crying spells and difficulty getting out of bed. Dr. Mihajlovic certified that plaintiff needed intermittent FMLA leave, because, during a flare-up of depression, it was medically necessary for plaintiff to be absent from work. Dr. Mihajlovic certified that plaintiff's treatment would require monthly follow-up appointments with Dr. Mihajlovic.

On March 20, 2013, ABM granted plaintiff intermittent FMLA leave. An ABM human-resources employee, Elizabeth Rivera ("Rivera") informed plaintiff that, to use FMLA leave, she needed to let ABM know, when she called in to report an absence, that she was using leave. Specifically, Rivera told plaintiff that she could do so by specifying that her condition was the reason for missing work, by saying that she was taking leave or by indicating in any other way that FMLA leave was the reason for her absence. So long as plaintiff made some reference to leave, her absences would be excused.

On April 1 and 2, 2013, respectively, plaintiff telephoned Kljucanin and reported that she would be absent. On April 3, 2013, plaintiff telephoned Kljucanin and reported that she would be absent through April 5, 2013. At that time, plaintiff asked to use vacation time for her absences that week. Kljucanin granted the request. In those three calls, Kljucanin did not in any way indicate that she was taking intermittent FMLA leave. On May 13, 2013, June 24, 2013 and June 25, 2013, plaintiff called off from work without in any way indicating that she was absent for intermittent FMLA leave. Plaintiff testified (at her deposition) that she could not recall why she was absent those days.

At some point in July 2013, plaintiff telephoned Kljucanin and said that she had missed work on July 23 and 24 due to her hospitalization and that she had missed work on July 25, 2013 to recuperate. Kljucanin informed Rivera, who sent plaintiff another certification form so that

she could apply for leave under the FMLA in the event she had been diagnosed with an additional serious health condition. Plaintiff returned the certification on August 19, 2013. On the form, plaintiff's physician indicated that plaintiff had been hospitalized for a gastrointestinal condition. ABM granted plaintiff FMLA leave for July 23 through 25, 2013.

In the meantime, on August 12, 2013, plaintiff called off from work without in any way indicating a need for FMLA leave. Instead, plaintiff requested that she be allowed to take that day off as a paid birthday holiday (which was allowed under the applicable collective bargaining agreement). Kljucanin granted the request. Plaintiff later testified that she could not remember why she had been off work that day.

On August 19, 2013, after plaintiff returned her FMLA certification for the gastrointestinal condition, Rivera had a conversation with plaintiff in Spanish, plaintiff's native language. Rivera told plaintiff that if she did not indicate that leave was the reason she was missing work (by, for example, stating that she was taking leave or otherwise indicating that her absence was due to FMLA or her condition), then her absence would be considered unexcused and she would be subject to discipline. Plaintiff told Rivera that she understood and would give ABM notice when she needed intermittent FMLA leave.

Soon thereafter, plaintiff did so. On September 11 and 30, 2013 and on October 29, 2013, when plaintiff called off from work, she stated that she needed the day off for leave reasons. Kljucanin recorded plaintiff's absences for those days as FMLA leave. Other times, including September 23, 2013 and October 28, 2013, however, plaintiff called off from work without indicating that the reason was in any way related to FMLA or to her depression or gastrointestinal condition. Specifically, on October 28, 2013, plaintiff left a voicemail message for Kljucanin in which she said, "Hi, Donna. This is Neidy. I am sorry I would not be able to

work today.  Bye."  Plaintiff testified that she did not remember why she was absent September 23 and October 28, 2013.

On November 1, 2013, Rivera sent to plaintiff by Federal Express a letter requesting additional documentation of plaintiff's gastrointestinal condition.  Among other things, Rivera stated, "As per our conversation on August 19, 2013, when calling off from work due to the FMLA related conditions, you need to clearly state this to your supervisor Donna Kljucanin.  If the absence is not clearly stated as FMLA, it may be considered unexcused and subject to disciplinary action in accordance with our Attendance Policy."  Rivera confirmed that the letter was delivered to plaintiff's home by Federal Express on November 4, 2013.

On December 9, 2013, plaintiff left a message for Kljucanin, in which message plaintiff stated, "Hi, Donna.  This is Neidy.  I am sorry I would not be able to work today.  Bye."  On December 10, 2013, plaintiff left for Kljucanin a message stating, "Hi, Donna. This is Neidy.  I am sorry I would not be able to work today.  Sorry.  Bye."  In her December 23, 2013 voice message to Kljucanin, plaintiff stated, "Hi, Donna.  This is Neidy.  You know what, I am sorry I would not be able to work today.  Bye."  In her December 24, 2013 voice message to Kljucanin, plaintiff stated, "Hi, Donna.  This is Neidy.  You know what, I am sorry I would not be able to work today.  I hope you have a Merry Christmas.  I am sorry about this.  Bye."

When Kljucanin told Bobola that plaintiff had called off from work on December 23 and 24, 2013 without referencing leave or either of her approved conditions, Bobola asked Kljucanin to let him know whether plaintiff returned to work on December 26, 2013.  On the 26th, plaintiff left a voice message for Kljucanin, in which message plaintiff said, "Hi, Donna.  This is Neidy.  You know what, I am sorry I would be not able to work today."  Kljucanin informed Bobola.

On December 26, 2013, Bobola held a meeting with Sylvia Diemer, Marian Nussbaumer-Olund and Doug Houle, each of whom worked in ABM's human-resources department, in order to discuss plaintiff's attendance. The four decided, in light of plaintiff's history of absenteeism, that plaintiff's employment should be terminated for excessive absenteeism. During the meeting, none of the participants raised plaintiff's age, ethnicity, national origin, FMLA status or disability status when deciding to terminate her employment. Plaintiff later testified that no one at ABM ever called her any slurs related to her color, ethnicity, national origin, age or disability. ABM has no record of plaintiff's ever asking for an accommodation for a disability during her employment with ABM.

Although Kljucanin had not been involved with the decision to terminate plaintiff's employment (and had not made a recommendation as to what, if any, discipline plaintiff should face), Bobola directed Kljucanin to inform plaintiff about the termination of her employment. When plaintiff arrived for work on December 27, 2013, Kljucanin informed plaintiff that ABM was terminating her employment.

Plaintiff filed a grievance with her union to contest the termination of her employment. Plaintiff, her union representative and Sylvia Diemer met to discuss the grievance. Plaintiff's union representative's notes reflect that plaintiff stated she sometimes forgot to reference FMLA or her approved conditions when calling off from work. Plaintiff's union representative's notes also reflect that plaintiff stated she knew she was supposed to state she was taking leave or otherwise indicate that her absence was due to an approved condition. Plaintiff's union ultimately decided that there was insufficient evidence to pursue her grievance.

After plaintiff was discharged from her job, she met with Dr. Mihajlovic for the first time since February. At that December 30, 2013 appointment, plaintiff told Dr. Mihajlovic she had

been terminated due to "no shows" and that she had "failed to call in . . . to discuss her condition."

ABM, after terminating plaintiff's employment, posted plaintiff's former position as available. Under the relevant collective bargaining agreement, ABM was required to fill the position with the most senior person who applied. That person was Lucina Chavez, a Hispanic woman who was twelve years older than plaintiff.

During discovery, plaintiff identified Ewa Heindorf ("Heindorf"), who is Polish, as a person that ABM treated more favorably than plaintiff. Like plaintiff, Heindorf worked at Prudential Plaza. ABM terminated Heindorf's employment on April 15, 2013, because Heindorf removed food from a tenant's office, despite the fact that the food was labeled for an event. A few weeks later, ABM offered to reinstate Heindorf's employment, this time as a floating cleaner. As a floating cleaner, Heindorf could be called in to work in place of absent custodians, but Heindorf was not guaranteed hours and was not eligible to earn seniority in buildings. When ABM reinstated Heindorf, she was 64 years old.

## II.    STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). When considering a motion for summary judgment, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021 (7th Cir. 2018). Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A genuine issue

of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). "As the 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017).

## III.    DISCUSSION

### A.    FMLA

In case no. 15-cv-1406, plaintiff asserts four claims under the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. In Count I, plaintiff asserts that defendant ABM interfered with her rights under the FMLA. In Count II, plaintiff asserts the same claim against defendant Kljucanin. In Counts III and IV, plaintiff asserts retaliation claims against ABM and Kljucanin, respectively.

#### 1.    Plaintiff's interference claims

The FMLA grants "an eligible employee" up to "12 workweeks of leave during any 12-month period" because of, among other things, "a serious health condition that makes the employee unable to perform the functions of [her] position." 29 U.S.C. § 2612(a)(1)(D). Pursuant to 29 U.S.C. § 2615(a)(1), it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this chapter."

To establish a claim for interference with FMLA rights, a plaintiff must establish: "(1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take

leave; and (5) her employer denied her FMLA benefits to which she was entitled." *Taylor-Novotny v. Health Alliance Med. Plans, Inc.*, 772 F.3d 478, 498 (7th Cir. 2014).

Here, the evidence is undisputed that plaintiff was granted FMLA leave. In late February 2013, plaintiff requested FMLA leave for depression, and ABM granted her intermittent leave for that condition. It is undisputed that plaintiff was told that, when calling in to report an absence, she must indicate her need for leave by stating that she was taking leave, by stating that she was absent due to her condition or by indicating in any other way that the absence was leave-related. It is also undisputed that in July 2013, plaintiff was granted FMLA leave for a gastrointestinal condition. Plaintiff was again told to reference leave or her condition when notifying her supervisor of her absence. When she did so (for example, on September 11 and 30, 2013 and October 29, 2013), plaintiff was granted FMLA leave.

It was only when plaintiff failed to state that her absence was due to leave or her condition that the absences were considered unexcused. Thus, plaintiff's absences were unexcused on September 23, October 28, December 9-10, December 23-24 and December 26, 2013. It is undisputed that plaintiff did not notify her employer on those days that the reason for her absence was her condition or the need for leave. There is no evidence that plaintiff missed work on the days of those unexcused absences for reasons that would have been covered by the FMLA had plaintiff properly notified her employer of the reason. In any case, defendants were within their rights to require plaintiff, when she phoned in to report her absence, to state a reason for the absence—either that she was taking leave or would be absent due to one of her conditions—lest the absence be considered unexcused. In *Taylor-Novotny*, the Seventh Circuit explained:

> On multiple occasions, [defendant] had approved 'intermittent time off as needed to manage [her] condition as specified by [her] physician.' [Defendant] noted,

however, that it was [plaintiff's] 'responsibility to let [her] manager know each time an absence from work will be necessary, as well as whether or not [her] absence should be charged to this approved Family Leave.' . . . *All [plaintiff] had to do was inform her supervisor both that she was running late and that her delay was due to her condition.* If that occurred, [plaintiff's] tardy would be excused, and only the amount of time that [plaintiff] actually was late would be deducted from her FMLA balance. Finally, [plaintiff] claims that [defendant] interfered with her FMLA rights by not permitting her to use her badge scans to report her work hours. As we noted previously, the badge scans only recorded the time of entry, *not the reason* for [plaintiff's] late arrival. Consequently, the badge scans *could not provide [defendant] with the information that it needed to determine whether [plaintiff's] tardiness should be charged as FMLA leave.*

*Taylor-Novotny*, 772 F.3d at 498-99 (emphasis added); *see also* 29 C.F.R. § 825.303(b) ("When an employee seeks leave due to a qualifying reason, for which the employer has previously provided the employee FMLA-protected leave, the employee must specifically reference either the qualifying reason for leave or the need for FMLA leave. Calling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act."). Plaintiff has not put forth any evidence that her condition prevented her from stating a reason for her absence on days she telephoned to say she would be absent.

In sum, plaintiff has not put forth any evidence from which a reasonable jury could conclude that defendants interfered with her rights under the FMLA. Defendants are entitled to judgment as a matter of law on plaintiff's interference claims. Defendant ABM is granted summary judgment on Count I, and defendant Kljucanin is granted summary judgment on Count II.

### 2.    Plaintiff's FMLA retaliation claims

The FMLA also makes its unlawful "for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). The "difference between a retaliation and interference theory is that the first 'requires proof of discriminatory or retaliatory intent while [an interference

theory] requires only proof that the employer denied the employee his or her entitlements under the Act.'" *Goelzer v. Sheboygan Cty., Wis.*, 604 F.3d 987, 995 (7th Cir. 2010). To prevail on this claim, plaintiff must establish: "(1) [she] engaged in statutorily protected activity; (2) [defendant] subjected her to an adverse action; and (3) the protected activity caused the adverse action." *Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018).

Plaintiff has put forth no evidence that her request for FMLA leave caused the termination of her employment. ABM terminated plaintiff's employment roughly ten months after plaintiff requested FMLA leave, so the timing is not suspicious. *See Leonard v. Eastern Ill. Univ.*, 606 F.3d 428, 432 (7th Cir. 2010) ("The six-month lag between [plaintiff's] April 2005 complaint to the civil rights office and his October 2005 unsuccessful interview is too long to infer a link between the two."); *Young-Gibson v. Board of Ed. of City of Chi.*, 558 Fed.Appx. 694, 699 (7th Cir. 2014) (gap of seven months not suspicious). It is undisputed that ABM's reason for terminating plaintiff's employment was excessive absenteeism. Kljucanin, for her part, was not even involved in the decision to discharge plaintiff. In short, plaintiff has put forth no evidence from which a reasonable jury could infer unlawful intent. *See Tibbs v. Administrative Office of the Ill. Courts*, 860 F.3d 502, 505-6 (7th Cir. 2017) ("The critical question is simply whether the inference of unlawful intent is reasonable (at summary judgment) or correct (at trial).").

Defendants are entitled to judgment as a matter of law on plaintiff's FMLA retaliation claims. ABM is granted summary judgment on Count III, and Kljucanin is granted summary judgment on Count IV.

**B.    ADA**

In case no. 16-cv-8295, plaintiff asserts four claims under the Americans with Disabilities Act against defendant ABM.  In Count II, plaintiff asserts that ABM discriminated against her on the basis of disability in violation of the ADA.  In Count III, plaintiff asserts that ABM failed to provide a reasonable accommodation.  In Count IV, plaintiff asserts that ABM retaliated against her after she exercised rights under the ADA, and in Count I plaintiff asserts that ABM interfered with her rights under the ADA.

**1.    Disparate treatment under the ADA**

The ADA makes it unlawful to "discriminate against a qualified individual on the basis of disability in regard to . . . the . . . discharge of employees . . . and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  Plaintiff claims that defendant discharged her on the basis of her disability.  The Seventh Circuit has concluded that proof of a discharge "on the basis of disability" means disability was the but-for cause.  *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019).  Thus, to prevail on this claim, plaintiff must show:  (1) she is disabled; (2) she "was qualified to perform the essential functions with or without a reasonable accommodation;" and (3) disability was the but-for cause of [her] discharge.  *Scheidler*, 914 F.3d at 541.

Plaintiff has not put forth any evidence from which a reasonable jury could conclude that she has a disability within the meaning of the statute.  The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual."  42 U.S.C. § 12102(1)(A).  Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."

42 U.S.C. § 12102(2)(A).  Although plaintiff provided defendant ABM with evidence that she suffers from depression and had a gastrointestinal condition, she has put forth no evidence in this record as to whether or how either condition substantially limits a major life activity.[2] Accordingly, plaintiff has not created a triable issue as to whether she is disabled.  That alone is reason to grant defendant summary judgment on this claim.

In addition, plaintiff has not shown that she is a qualified individual.  The ADA defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).  An absentee employee is not a qualified individual with a disability.  As the Seventh Circuit has explained:

> An employer is generally permitted to treat regular attendance as an essential job requirement and need not accommodate erratic or unreliable attendance.  A plaintiff whose disability prevents her from coming to work regularly cannot perform the essential functions of her job, and thus cannot be a qualified individual for ADA purposes.

*Basden v. Professional Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013) (citations omitted).

Plaintiff has neither identified an accommodation that would have allowed her to attend work regularly nor provided evidence that, after a short leave, she could have been expected to attend work regularly.  *See Taylor-Novotny*, 772 F.3d at 490 ("[Plaintiff] has not pointed to any evidence in the record that there was an accommodation that would allow her to meet [the attendance] requirement. . . .  [W]e cannot conclude that [plaintiff] could satisfy the essential function of regular attendance and, therefore, [she] is not a qualified individual with a disability

---

[2] To establish she was substantially limited in the major life activity of working, for example, plaintiff had to put forth evidence that she was "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."  *Povey v. City of Jeffersonville, Ind.*, 697 F.3d 619, 623 (7th Cir. 2012) (citations omitted).

entitled to protection under the ADA."); *Basden*, 714 F.3d at 1038 (plaintiff failed to put forth evidence that she "was able to come to work regularly at the time of her termination, or that her regular attendance could have been expected following the leave she sought or with any other accommodation"). Plaintiff is not a qualified individual under the ADA.

Finally, plaintiff has put forth no evidence to suggest disability was the but-for cause of her discharge. It is undisputed that ABM terminated plaintiff's employment due to absenteeism. Accordingly, defendant is entitled to judgment as a matter of law on plaintiff's claim for disparate treatment under the ADA. ABM is granted summary judgment on Count II.

## 2. Failure to accommodate

In Count III, plaintiff asserts that defendant violated the Americans with Disabilities Act by failing to provide a reasonable accommodation. As noted above, the ADA makes it unlawful to "discriminate against a qualified individual on the basis of disability[.]" 42 U.S.C. § 12112(a). Included in the definition of discriminate is "not making reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). In order to establish a claim for failure to accommodate, the plaintiff must show: (1) she "is a qualified individual with a disability;" (2) "the employer was aware of the disability;" and (3) "the employer failed to reasonably accommodate the disability." *Equal Employment Opportunity Comm'n. v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005); *see also Taylor-Novotny*, 772 F.3d at 493.

The Court has already concluded that plaintiff has failed to put forth any evidence from which a reasonable jury could conclude that she has a disability within the meaning of the ADA. This Court has also already concluded that plaintiff failed to put forth evidence from which a reasonable jury could conclude that she is a qualified individual with a disability. As a matter of

law, then, plaintiff was not entitled to a reasonable accommodation even if she had asked for one. It is undisputed that ABM had no record of plaintiff's requesting an accommodation during her employment with ABM.

Defendant is entitled to judgment as a matter of law on plaintiff's claim for failure to accommodate. ABM is granted summary judgment on Count III.

### 3. ADA retaliation

Next, plaintiff alleges that defendant retaliated against her when it terminated her employment. To survive summary judgment, plaintiff must show: "(1) statutorily protected activity; (2) adverse employment action; and (3) causal connection." *Scheidler*, 914 F.3d at 544.

Plaintiff's claim cannot survive defendant's motion. Plaintiff has put forth no evidence that she requested an accommodation. The undisputed evidence is that ABM had no record of plaintiff's requesting an accommodation during her employment, so it is unclear how any such request could have influenced the decision to terminate plaintiff's employment. The evidence is also undisputed that the reason ABM terminated plaintiff's employment was absenteeism. Plaintiff has simply put forth no evidence to support this claim. Defendant is entitled to judgment as a matter of law on plaintiff's ADA retaliation claim.

ABM is granted summary judgment as to Count IV.

### 4. Interference

The ADA makes it "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter." 42 U.S.C § 12203(b). In order to prevail, plaintiff must show: "(1) she engaged in activity statutorily protected by the

ADA; (2) she was engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; (3) defendants coerced, threatened, intimidated, or interfered on account of her protected activity; and (4) the defendants were motivated by an intent to discriminate." *Frakes v. Peoria School Dist. No. 150*, 872 F.3d 545, 550-551 (7th Cir. 2017).

The record is devoid of evidence to support this claim. It is undisputed that ABM had no record of plaintiff's ever requesting an accommodation during her employment. The record contains no evidence that defendants were motivated by intent to discriminate. It is undisputed that when ABM's employees decided to terminate plaintiff's employment, they did not discuss plaintiff's disability status. It is undisputed that ABM terminated plaintiff's employment due to absenteeism.

Plaintiff has put forth no evidence to support this claim. Defendant is entitled to judgment as a matter of law on this claim. Defendant is granted summary judgment on Count I.

### C.      Other claims

Finally, in case no. 16-cv-8295, plaintiff asserts that defendant ABM discriminated against her on the basis of her race, color and national origin in violation of Title VII of the Civil Rights Act of 1964 (Count V) and on the basis of her age in violation of the Age Discrimination in Employment Act (Count VI).[3]

### 1.      Title VII

Title VII of the Civil Rights Act of 1964 makes it unlawful "to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-

---

[3] To the extent plaintiff was attempting to assert claims for retaliation under Title VII or the ADEA, defendant is entitled to judgment as a matter of law on those claims. Plaintiff has put forth no evidence that she engaged in statutorily-protected conduct or that such conduct caused ABM to terminate her employment. The undisputed evidence is that ABM terminated her employment due to absenteeism.

2(a)(1).  The question for this Court is "whether the evidence would permit a reasonable fact-finder to conclude that [plaintiff] was subjected to an adverse employment action based on a statutorily prohibited factor." *McCurry*, 942 F.3d at 788.

Here, plaintiff has put forth no evidence from which a reasonable jury could conclude that ABM discharged her based on her color, race or national origin.  The undisputed evidence is that ABM terminated plaintiff's employment due to absenteeism.  It is undisputed that the decision-makers did not raise plaintiff's national origin or ethnicity when they decided to terminate her employment.  It is undisputed that plaintiff was never subjected to slurs based on her color, ethnicity or national origin.

Nor has plaintiff put forth evidence that a similarly-situated employee outside of her protected class was treated more favorably.  Although defendant put forth evidence that it also terminated the employment of a custodian outside of plaintiff's protected national-origin class, that custodian was not similarly-situated to plaintiff.  Specifically, defendant put forth evidence that it terminated the employment of a Polish custodian, Heindorf, for taking food.  Heindorf was later reinstated, while plaintiff was not.  The fact that Heindorf was reinstated does not create an inference that plaintiff was discriminated against on the basis of her national origin (or any other protected class), because Heindorf was not a similarly-situated employee.  *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 369 (7th Cir. 2019) (explaining that to be a similarly-situated employee, the comparator must have "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.").  Unlike plaintiff, Heindorf was not discharged for absenteeism.

Defendant is entitled to judgment as a matter of law on plaintiff's Title VII claim.  ABM is granted summary judgment on Count V.

### 2.     ADEA

The ADEA covers individuals "who are at least 40 years of age," 29 U.S.C. 631(a), and makes it unlawful "to discharge any individual . . . because of such individual's age," 29 U.S.C. § 623(a)(1).  In order for plaintiff to establish that defendant terminated her employment based on her age, "it's not enough to show that age was a motivating factor.  The plaintiff must prove that, but for [her] age, the adverse action would not have occurred."  *McDaniel*, 940 F.3d at 367 (quoting *Martino v. MCI Commc'ns Serv., Inc.*, 574 F.3d 447, 455 (7th Cir. 2009)).

Plaintiff has put forth no evidence from which a reasonable jury could conclude that age was the but-for cause of her discharge.  It is undisputed that ABM discharged plaintiff for absenteeism.  In addition, plaintiff was replaced by an individual twelve years older than she was.  Defendant is entitled to judgment as a matter of law on plaintiff's ADEA claim.

ABM is granted summary judgment on Count VI.

## IV.     CONCLUSION

For all of these reasons, the Court grants defendants' motion [188] for summary judgment.  Defendant ABM is granted summary judgment on Counts I, II, III, IV, V and VI in case no. 16-cv-8295.  Civil case terminated.

Defendant ABM is granted summary judgment on Counts I and III in case no. 15-cv-1406.  Defendant Kljucanin is granted summary judgment on Counts II and IV in case no. 15-cv-1406.  Civil case terminated.

**SO ORDERED.**                                    **ENTERED: January 21, 2020**

_____
**HON. JORGE ALONSO**
**United States District Judge**